[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11546
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cr-00345-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEROME ANTWAN COOPER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(April 26, 2017)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Jerome Cooper appeals his conviction and 120-month sentence for one count of unlawful possession of a firearm by a felon.  After careful review, we affirm.

I.

On March 10, 2014, Jeff Hodges, an employee at a Home Depot in Savannah, Georgia, noticed suspicious behavior by two shoppers.  After reporting the suspicious behavior to his supervisor and another employee, he approached the two men and identified himself as a Home Depot asset protection employee.  One man ran away, but the other man—later identified as Cooper—did not.  Hodges and Cooper got into a physical altercation, and Hodges "did everything [he] could to control [Cooper's] hands" to prevent Cooper from reaching into his pocket.  Hodges called for help and his supervisor and the other Home Depot employee came to his aid.

During this struggle, Officer Brandon Tufts of the Savannah-Chatham Metropolitan Police Department was in the Home Depot parking lot assisting another officer with a traffic accident.  A Home Depot employee yelled to Officer Tufts that "loss prevention was taking a shoplifter into custody near the garden entrance."  After arriving on the scene, Officer Tufts saw a group of Home Depot employees on the ground trying to control Cooper by "keeping his hands away from his body."  Tufts identified himself to Cooper, told him to stop resisting, and said "I'm going to place [you] in handcuffs . . . . until I figure[] out exactly what's

2

going on."  He then put Cooper in handcuffs and gathered information about what happened from the Home Depot employees.

Next, Officer Tufts asked Cooper whether "he had anything on him that would hurt" Tufts.  Tufts could not recall whether Cooper responded in the negative or did not reply at all.  But he observed that a heavy object seemed to be in Cooper's right shorts pocket, and suspected that Cooper had a weapon.  Thus, Officer Tufts searched Cooper's pocket and found a loaded pistol.  At the time, Cooper was a convicted felon.

Cooper was charged in September 2014 by a federal grand jury with possession of a firearm by a convicted felon.  He was appointed a defense attorney, Laura Hastay.  After a series of pre-trial motions, including an unsuccessful pro se motion for new counsel, Cooper proceeded to trial.  A jury found him guilty.  Cooper filed a counseled motion for new trial, arguing in part that Hastay was ineffective for failing to file a pre-trial motion to suppress the firearm.  He then filed pro se motions for new trial and new counsel.  The district court again refused to appoint Cooper new counsel, and did not consider his pro se motion for new trial.  It also denied Cooper's counseled motion for new trial, finding that any motion to suppress the pistol would have been unsuccessful because "the firearm found in Defendant's possession was discovered by Home Depot employees after they detained Defendant on suspicion of shoplifting."

3

Before sentencing, the Presentence Investigation Report ("PSR") calculated Cooper's base offense level under the United States Sentencing Guidelines to be 24 based on two prior felony convictions for crimes of violence: robbery for sudden snatching and terroristic threats. This resulted in a Guidelines recommendation of 120-months imprisonment—the statutory maximum. At sentencing, Cooper raised several objections to the PSR, including that his robbery for sudden snatching conviction was not a crime of violence under the Guidelines. The district court overruled Cooper's objections and adopted the PSR's findings and calculations. It then sentenced him to 120-months imprisonment.

## II.

Cooper asserts several challenges on appeal. First, he says his defense counsel was ineffective for failing to file a motion to suppress the firearm that was found in his pocket and for failing to interview a government witness before trial. Claims of ineffective assistance of counsel are generally not considered for the first time on direct appeal. See Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003). However, "in the rare instance when the record is sufficiently developed," we may decide an ineffective assistance claim on direct appeal. United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005).

An ineffective assistance of counsel claim presents a mixed question of fact and law, which this Court reviews de novo. Hardwick v. Sec'y, Fla. Dep't of

Corr., 803 F.3d 541, 545 (11th Cir. 2015). To make an ineffective assistance of counsel claim, a defendant must allege facts showing that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

Under the performance prong, counsel's representation is judged by a standard of "reasonableness under prevailing professional norms," and there is "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 688–89, 104 S. Ct. at 2065. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91, 104 S. Ct. at 2066. The defendant must show no competent counsel would have taken the action that his counsel took. Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the prejudice prong, the defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. Johnson v. Sec'y, Dep't of Corr., 643 F.3d 907, 928–929 (11th Cir. 2011). "[B]ecause both parts of the test must be satisfied

5

to show [ineffective assistance of counsel], a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010).

As an initial matter, the record is sufficiently developed here for us to address Cooper's claim that Hastay was ineffective for failing to file a motion to suppress.[1] The magistrate judge held an evidentiary hearing on Cooper's motion for new counsel in which Hastay's failure to file a motion to suppress was the central issue. Hastay explained to the court why she decided not to pursue a motion to suppress, and Cooper had an opportunity to express to the court his arguments that Hastay was ineffective.

Cooper has not demonstrated that Hastay's representation fell outside the wide range of reasonable professional assistance. At the evidentiary hearing, Hastay articulated plausible tactical reasons for why she did not file a motion to suppress. Specifically, she said she did not want Cooper to admit under oath that he had a gun in his pocket. She also did not want to reveal parts of her trial cross-examination strategy to the government. She weighed these concerns against the odds of successfully suppressing the firearm and determined that filing a motion to suppress would not be in Cooper's interest. Thus, Cooper has not defeated the

---

[1] However, the record is not sufficiently developed to address Cooper's claim that Hastay was ineffective for failing to interview a government witness before trial. Thus, that claim should be resolved in a habeas corpus proceeding, where an evidentiary hearing may be held. Massaro, 538 U.S. at 504–05, 123 S. Ct. at 1694.

6

"strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."[2] Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

## III.

Cooper's second argument is that the district court erred when it denied his repeated motions for new counsel. We review a district court's ruling on a motion for new counsel for abuse of discretion. United States v. Calderon, 127 F.3d 1314, 1343 (11th Cir. 1997). We look at the timeliness of the motion, the adequacy of the district court's inquiry, and the merits of the defendant's claim that counsel should have been replaced. Id. As to the merits of a motion for new counsel, an indigent criminal defendant "does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." United States v. Garey, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc) (quotation omitted). Good cause in this context means a fundamental problem, "such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." Id. (quotation omitted).

Further, even if the district court abused its discretion, Cooper must also show that Hastay's continued representation caused him prejudice. Calderon, 127

---

[2] Because Cooper's claim fails on the performance prong, we need not consider the prejudice prong. See Ward, 592 F.3d at 1163. We therefore express no opinion on whether a motion to suppress the pistol would have been successful.

F.3d at 1343. If he cannot show prejudice, then the district court's error was harmless. Id. A defendant demonstrates prejudice by showing that his counsel's performance was "not within the range of competence demanded of attorneys in criminal cases" and that but for counsel's continued representation, the result of the proceeding would have been different. Id. (quotation omitted).

Even assuming the district court here erred in denying his motions for new counsel, that error was harmless because Cooper has not shown that Hastay's continued representation caused prejudice. Cooper says the district court should have granted him new counsel because "the attorney-client communication between [him] and Ms. Hastay had become irreparably broken." However, he never specifically argues that Hastay's continued representation after the district court denied his motions for new trial caused him prejudice. Instead, as we mentioned above, he argues (in a different section of his brief) that Hastay's performance fell outside the range of competence demanded of attorneys in criminal cases when she (1) failed to file a motion to suppress the firearm; and (2) failed to interview a government witness before trial. But we have already concluded that Hastay did not provide constitutionally deficient representation by failing to move to suppress the firearm, and that the record is not sufficiently developed to analyze Hastay's failure to interview a government witness before trial. Thus, Cooper has not shown here that Hastay's continued representation

8

caused him prejudice, so we must deem any error by the district court in denying his motions for new counsel to be harmless.

IV.

Next, Cooper says the district court erred when it denied his motion for new trial because the district court relied on a mistaken finding of fact. We review the denial of a motion for new trial for abuse of discretion. United States v. Scrushy, 721 F.3d 1288, 1303 (11th Cir. 2013). A district court abuses its discretion if it "misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous." Id. (quotation omitted). We also review the denial of a motion for new trial for harmless error. See United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005). We ask whether it still would have been an abuse of discretion to deny a motion for new trial under the correct law and facts. See id.

The district court clearly erred in its order denying the motion for new trial when it found that Home Depot employees discovered the firearm. The trial testimony from Officer Tufts and the Home Depot employees plainly indicated that Officer Tufts discovered the firearm when he searched Cooper's pocket, even though one employee suspected Cooper had a firearm before Officer Tufts found it. However, even under the correct set of facts, the district court did not abuse its discretion in denying Cooper's motion for new trial. Cooper says he is entitled to a new trial because Hastay was ineffective for failing to file a motion to suppress the

9

firearm.  But as we explained above, Hastay's strategic decision not to file a motion to suppress did not fall outside "the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.   Thus, the district court's factual error in its order denying Cooper's motion for new trial was harmless.

V.

Finally, Cooper argues the district court erred when it found that his prior Georgia conviction for robbery by sudden snatching qualifies as a "crime of violence" under the Sentencing Guidelines.  We review de novo whether a prior conviction counts as a crime of violence under the Guidelines.  United States v. Palomino Garcia, 606 F.3d 1317, 1326 (11th Cir. 2010).

Section 2K2.1(a)(2) of the Sentencing Guidelines sets the base offense level for a crime involving unlawful possession of firearms at 24 if the defendant has two prior felony convictions for crimes of violence as defined in § 4B1.2(a).  USSG § 2K2.1(a)(2) (2015).  In turn, § 4B1.2(a)(2) (2015) defines a "crime of violence" to include any offense punishable by more than one year of imprisonment that "involves conduct that presents a serious potential risk of physical injury to another."  This phrase is known as the "residual clause."

To determine whether a prior conviction falls within the residual clause's definition of a crime of violence, we first apply what's called the formal

categorical approach.  This means we look only at the elements of the statute under which the defendant was convicted, and not at the facts underlying the prior conviction.  See Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243, 2251 (2016); Descamps v. United States, 570 U.S. ___, 133 S. Ct. 2276, 2283 (2013).  If the "least of the acts criminalized" by the statute, Moncrieffe v. Holder, 569 U.S. ___, 133 S. Ct. 1678, 1684 (2013) (quotation omitted and alteration adopted), involves conduct that "presents a serious potential risk of physical injury" to another person, then the defendant's earlier conviction under that statute is a crime of violence within the meaning of the residual clause.  Thus, when applying the formal categorical approach, we must identify the "least culpable conduct" prohibited by the statute of conviction and presume that the defendant's prior conviction rested on "nothing more" than this conduct.  Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1283 (11th Cir. 2013); Moncrieffe, 133 S. Ct. at 1684 (quotation omitted and alteration adopted).  To identify the least culpable conduct, we look to how state courts have interpreted the statute.  See United States v. Rosales–Bruno, 676 F.3d 1017, 1021 (11th Cir. 2012).  And as part of this step, we must analyze "the version of state law that the defendant was actually convicted of violating."  McNeill v. United States, 563 U.S. 816, 821, 131 S. Ct. 2218, 2222 (2011).

11

Cooper pleaded guilty to robbery by sudden snatching in Georgia in 2010. At that time, the relevant statute, O.C.G.A. § 16-8-40(a)(3), defined robbery by sudden snatching as the taking of property "from the person or the immediate presence of another . . . [b]y sudden snatching" "with intent to commit theft." Further, Georgia case law at the time defined robbery by sudden snatching to require force "necessary for the robber to transfer the property taken from the owner to his possession." Kendrick v. State, 630 S.E.2d 863, 865 (Ga. Ct. App. 2006) (quotation omitted). However, Georgia courts also held that the statute required victims to be aware of the taking as the crime is being committed. See id. (noting that "[i]n order to prove a case of robbery by suddenly taking or carrying away the property of another without his consent," it was "necessary to show that the person robbed was conscious that something was being taken away from him" (quotation omitted)); McNearney v. State, 436 S.E.2d 585, 586–87 (Ga. Ct. App. 1993) (reversing a robbery by sudden snatching conviction "because the victim was unaware of the crime until after it was completed").

In United States v. Welch, 683 F.3d 1304 (11th Cir. 2012), this Court held that a crime similar to Georgia robbery by sudden snatching falls within the identically-worded residual clause of the Armed Career Criminal Act ("ACCA"). Although the Welch panel examined Florida's robbery statute, Fla. Stat. § 812.13, it concluded that the defendant "pleaded guilty to robbery at a time when mere

12

snatching sufficed" for a conviction under that statute.  683 F.3d at 1311–12.

Then, for the purpose of applying the formal categorical approach, it assumed the

defendant sustained his Florida robbery conviction by committing a mere sudden

snatching.  Id. at 1310, 1313.  The Welch panel concluded that Florida robbery

involves a substantial risk of physical injury within the meaning of the ACCA's

residual clause because in the ordinary case, "[t]he victim's natural reaction" to a

sudden snatching "is likely to be to try to hold on to his or her money or property,

leading in many cases to serious injury."  Id. at 1313.  In other words, a sudden

snatching "is much like burglary, where if the victim perceives what is going on, a

violent encounter is reasonably likely to ensue."  Id.

In light of Welch's analysis, Cooper's robbery by sudden snatching

conviction under O.C.G.A. § 16-8-40(a)(3) counts as a crime of violence under

USSG § 2K2.1(a)(2) because it "involves conduct that presents a serious potential

risk of physical injury to another."  USSG § 4B1.2(a)(2).  Section 16-8-40(a)(3)

requires the victim to be aware of the snatching as it is taking place. See Kendrick,

630 S.E.2d at 865; McNearney, 436 S.E.2d at 586–87.  Under Welch's reasoning,

if a sudden snatching victim "perceives what is going on," he or she will ordinarily

attempt to resist the snatching such that "a violent encounter is reasonably likely to

ensue"—which presents a "substantial risk of physical injury to the victim."  683

F.3d at 1313.  And although Welch addressed the residual clause in the ACCA, and

13

not the identically-worded residual clause in the Sentencing Guidelines, we interpret the two clauses the same way.  See Gilbert v. United States, 640 F.3d 1293, 1309 n.16 (11th Cir. 2011) (en banc).

Cooper argues that because the Supreme Court invalidated the ACCA's residual clause as unconstitutionally vague in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015), it also invalidated the Sentencing Guidelines' residual clause.  However, the Supreme Court recently held that the advisory Sentencing Guidelines are not subject to vagueness challenges under the Due Process Clause. Beckles v. United States, 580 U.S. ___, 137 S. Ct. 886, 890 (2017).  Thus, the residual clause in USSG § 4B1.2(a) is not unconstitutionally vague, and the district court did not err in finding that Cooper's conviction qualifies as a "crime of violence" under that clause.[3]

**AFFIRMED.**

---

[3] Again, Welch addressed the residual clause in the ACCA. Although Johnson invalidated that clause as unconstitutionally vague, Welch's reasoning still applies here because we are interpreting "nearly identical language" in the Sentencing Guidelines, which are not subject vagueness challenges.  See United States v. Matchett, 802 F.3d 1185, 1195–96 (11th Cir. 2016).

14