RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LARRY CRADLER,

>Petitioner-Appellant,

*v.*

UNITED STATES OF AMERICA,

>Respondent-Appellee.

No. 17-5046

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 2:07-cr-20130-1; 2:14-cv-02339—Jon Phipps McCalla, District Judge.

Argued:  March 15, 2018

Decided and Filed:  June 5, 2018

Before:  KEITH, KETHLEDGE, and THAPAR, Circuit Judges.

───────────────

### COUNSEL

**ARGUED:**  Needum L. Germany, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  Needum L. Germany, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

KEITH, J., delivered the opinion of the court in which KETHLEDGE and THAPAR, JJ., joined.  KETHLEDGE, J. (pg. 15), delivered a separate concurring opinion.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge. Petitioner-Appellant Larry Cradler ("Cradler") was sentenced as an armed career criminal pursuant to the Armed Career Criminal Act ("ACCA"). Cradler collaterally attacked his sentence through a motion filed pursuant to 28 U.S.C. § 2255, asking the district court to vacate his sentence and re-sentence him. The district court denied Cradler's motion, and this appeal followed. For the reasons set forth below, the district court's decision is **REVERSED** and the case is **REMANDED**.

## I.      FACTS

In 2008, a jury convicted Cradler of violating 18 U.S.C. § 922(g)(1) ("§ 922(g)(1)"), which prohibits convicted felons from possessing a firearm. This offense typically carries a maximum imprisonment penalty of 10 years. *See* 18 U.S.C. § 924(a)(2). However, under the ACCA, a defendant who violates § 922(g)(1) after being convicted of at least three violent felonies or serious drug offenses becomes subject to a mandatory minimum imprisonment penalty of 15 years. *See* 18 U.S.C. § 924(e)(1). At sentencing, the district court found that Cradler had been convicted of four violent felonies prior to violating § 922(g)(1) and, therefore, sentenced him under the ACCA, to an imprisonment term of 222 months (18.5 years). This court affirmed Cradler's judgment on September 9, 2011. Cradler did not file a petition for a writ of certiorari with the U.S. Supreme Court.

On May 8, 2014, Cradler, through counsel, filed a motion under 28 U.S.C. § 2255 to vacate his sentence ("§ 2255 motion"). Cradler argued that, in light of the U.S. Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013), two of his prior convictions—(1) sexual battery and (2) third-degree burglary—no longer qualified as violent felonies for ACCA purposes. Therefore, Cradler asserted that his record no longer contained the three violent felonies necessary to subject him to the ACCA's mandatory minimum imprisonment penalty. Based on this, Cradler concluded that his sentence was in excess of the

maximum authorized by law, entitling him to a vacating of his sentence and a remand for appropriate re-sentencing, pursuant to 28 U.S.C. § 2255.

Over the following 31 months, Cradler's § 2255 motion was litigated at length in the district court. The protracted nature of the litigation was due, in part, to the publishing of two Supreme Court cases during that time—*Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Mathis v. United States*, 136 S. Ct. 2243 (2016)—which Cradler used to update, revise, and at times replace, his original arguments. During this time, the United States conceded that it lacked the requisite information to support the argument that Cradler's sexual battery conviction qualifies as a violent felony for ACCA purposes. Since that time, this dispute has involved only Cradler's third-degree burglary conviction.

On December 29, 2016, the district court denied Cradler's § 2255 motion on the merits, concluding that his third-degree burglary conviction qualifies as a violent felony. The district court also denied Cradler's motion to proceed in forma pauperis, and declined to issue a certificate of appealability. On July 11, 2017, this court granted Cradler's motions for a certificate of appealability and to proceed in forma pauperis. This appeal followed.

On appeal, Cradler argues that the district court erred in denying his § 2255 motion because it misapplied the proper procedure for determining if a prior conviction qualifies as a violent felony. The United States argues that Cradler's § 2255 motion was properly denied, for three reasons: (1) the motion is untimely; (2) Cradler procedurally defaulted his claim; and (3) the district court properly determined that Cradler's third-degree burglary offense qualifies as a violent felony.

## II.     STANDARD OF REVIEW

"In reviewing a district court's denial of a motion under Section 2255, we apply a clearly erroneous standard to its factual findings and review its conclusions of law *de novo*." *Braden v. United States*, 817 F.3d 926, 929 (6th Cir. 2016) (quoting *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000)). "This court reviews *de novo* a district court's determination regarding whether a prior conviction constitutes a 'violent felony' under the ACCA." *Id.* at 930 (quoting *United States v. Kemmerling*, 612 F. App'x 373, 375 (6th Cir. 2015)).

## III.   SECTION 2255 MOTIONS, TIMELINESS, AND DEFAULT

Under 28 U.S.C. § 2255, a federal prisoner may move the court to vacate, set aside, or correct his sentence if the sentence "was imposed in violation of the Constitution or laws of the United States, or . . . the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. § 2255(a). "If the court finds that . . . the sentence imposed was not authorized by law . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*. at § 2255(b).

### A.  One-Year Limitations Period

The United States' first argument against Cradler's § 2255 motion is that the motion is untimely.  Motions under § 2255 are subject to a one-year period of limitation.  Normally, this period runs from "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  When, as here, the U.S. Court of Appeals affirmed a criminal judgment, but the defendant did not file a petition for a writ of certiorari with the Supreme Court, his judgment is deemed to be final when the time for filing such a petition expired (i.e., 90 days after the U.S. Court of Appeals entered judgment).  *Clay v. United States*, 537 U.S. 522, 525, 527 (2003). Because we affirmed Cradler's judgment of conviction on September 9, 2011, his judgment became final in December 2011.  Cradler filed his § 2255 motion in May 2014, well after the one-year period of limitation had expired.

However, subsection (f)(3) of § 2255 gives federal prisoners a second chance to attack their sentences, but only under special circumstances.  Subsection (f)(3) can restart the one-year period of limitation only if the U.S. Supreme Court (1) announces a "newly recognized" right that affects the prisoner's conviction and/or sentence, and (2) makes that new right retroactive to cases on collateral review.  *See* 28 U.S.C. § 2255(f)(3).  In such cases, the one-year limitation period restarts on "the date on which the right asserted [in the § 2255 motion] was initially recognized by the Supreme Court."  *Id*.

Throughout the pendency of his § 2255 motion, Cradler argued that the motion was timely under (f)(3) based on three different Supreme Court cases: first *Descamps*, then *Johnson*,

and lastly *Mathis*. The United States argues that none of these cases allows Cradler to successfully assert timeliness under (f)(3). However, before this court can consider the United States' timeliness defense, it is important to note that the United States did not raise this defense in the district court—instead, it was first raised in the United States' brief on appeal. When a party fails to preserve a defense by neglecting to raise it in the district court, that defense is usually deemed to have been forfeited. *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012).[1] Such is the case here.

## B. Effect of the Forfeited Timeliness Defense

"[A]ppellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance." *Id.* at 473. We are reluctant to "allow a party to withhold raising a defense until after the 'main event'—in this case, the proceeding in the District Court—is over." *Granberry v. Greer*, 481 U.S. 129, 132 (1987).

Nevertheless, out of concern for "judicial efficiency and conservation of judicial resources," appellate courts are not absolutely barred from considering a forfeited timeliness defense in a 2255 case. *Wood*, 566 U.S. at 472-73 (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)). "[C]ourts of appeals . . . have the authority—though not the obligation—to raise a forfeited timeliness defense on their own initiative. . . . [A]ppellate courts should reserve that authority for use in *exceptional cases*." *Id.* at 473 (emphasis added).

*Wood* mentions two factors appellate courts should consider when deciding whether to take up a forfeited timeliness defense in a 2255 case. First, declining to consider the forfeited timeliness issue is "all the more appropriate when the appellate court itself spots an issue the parties did not air below, and therefore would not have anticipated in developing their arguments on appeal." *Id.* That situation is not present here, however, because the United States raised this

---

[1]"We note here the distinction between defenses that are 'waived' and those that are 'forfeited.' A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." *Wood*, 566 U.S. at 470 n.4 (citations omitted). In this case, there is no evidence in the record to suggest that the United States explicitly relinquished the timeliness defense. Therefore, this court will consider the timeliness defense to have been forfeited, rather than waived.

argument on appeal, Cradler responded to it in his reply brief, and both parties discussed it at length during oral argument.

Second, appellate courts should have "[d]ue regard for the trial court's processes and time investment." *Id.* "When a court of appeals raises a procedural impediment to disposition on the merits, and disposes of the case on that ground, the district court's labor is discounted and the appellate court acts not as a court of review but as one of first view." *Id.* at 474.

Although both parties have developed their timeliness arguments on appeal,[2] we nonetheless feel that this is not one of the "exceptional cases" to which *Wood* referred. *See id.* at 473. Due to the protracted nature of the litigation in the district court, the United States had ample opportunity to raise this defense below. In the absence of a timeliness argument from the United States, the district court expended considerable time and energy considering the merits of Cradler's § 2255 motion over a period of 31 months. Therefore, we decline to exercise our authority to consider the forfeited timeliness defense.

## C. Procedural Default

The United States' second argument against Cradler's § 2255 motion is that Cradler procedurally defaulted his claim because he did not challenge on direct appeal the classification of his burglary conviction as a violent felony. However, like the timeliness defense, the United States also failed to raise this procedural default argument in the district court, thereby forfeiting it. Because procedural default is an affirmative defense, rather than a jurisdictional argument, we are not required to consider it once it has been forfeited. *See Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012). For the same reasons we decline to consider the timeliness defense, we likewise decline to consider the procedural default defense.

---

[2]At least one of our sister circuits has held that a situation similar to this one permitted the court to consider a forfeited timeliness issue. *See Dimott v. United States*, 881 F.3d 232, 238-39 (1st Cir. 2018) (holding that a timeliness issue not raised before the district court, but raised by the petitioner in the certificate of appealability, briefed by both parties on appeal, and discussed by both parties during oral argument, can be considered).

## IV.   CRADLER'S ACCA ENHANCEMENT

The enhanced penalties under the ACCA, including the 15-year mandatory minimum, apply when a person violates 18 U.S.C. § 922(g)(1) after having been convicted of at least three violent felonies. *See* 18 U.S.C. § 924(e)(1). Without the enhanced penalties of the ACCA, a § 922(g)(1) conviction carries a maximum penalty of 10 years. *See* 18 U.S.C. § 924(a)(2). Cradler argues that his 18.5-year sentence is in excess of the maximum authorized by law because he does not qualify for the ACCA enhancement. According to Cradler, the ACCA does not apply to him because he has not been convicted of three violent felonies. This argument is centered on Cradler's prior felony conviction for third-degree burglary in Tennessee, which he argues does not meet the ACCA's definition of a "violent felony."

In the ACCA, "burglary" is specifically enumerated as a "violent felony." *See* 18 U.S.C. § 924(e)(2)(B)(ii). However, the analysis is not that simple. The Supreme Court has outlined an analytical approach that courts must follow to determine whether a particular statute, despite having "burglary" in its name, truly entails the same type of "burglary" that is enumerated in the ACCA's "violent felony" definition. This is known as the categorical approach.

### A.  The Categorical Approach

"When determining which crimes fall within . . . the 'violent felony' provision of [the ACCA], federal courts use the 'categorical approach.'" *United States v. Covington*, 738 F.3d 759, 762 (6th Cir. 2014) (quoting *United States v. Ford*, 560 F.3d 420, 421-22 (6th Cir. 2009)). Under the "categorical approach," courts must compare the elements of the statute of conviction to the elements of the generic definition of the offense. *See Taylor v. United States*, 495 U.S. 575, 599-600 (1990). If the statute of conviction criminalizes more conduct than the generic definition, then that conviction is not the same offense enumerated in the ACCA's "violent felony" definition. *Descamps*, 570 U.S. at 257. As such, that conviction is not a violent felony for ACCA purposes. Statutes that criminalize more conduct than the generic definition of the offense are sometimes described as being "broader" than the generic offense, resulting in the use of shorthand monikers for them, including "overbroad," "too-broad," or "non-generic" statutes.

Under the categorical approach, courts may only compare the elements of the statute of conviction to the elements of the generic definition. In other words, courts are prohibited from looking to "the particular facts underlying those convictions," *Taylor*, 495 U.S. at 600, as a means of determining if "the defendant actually committed the offense in its generic form," *Descamps*, 570 U.S. at 261. Put simply, the hallmark of the categorical approach is that it is an "elements-only" analysis. *See Mathis*, 136 S. Ct. at 2252, 2254.

However, there are two aspects of the instant case that complicate the otherwise straightforward application of the categorical approach: (1) determining which statutory elements should be compared to the generic definition; and (2) determining the full range of conduct encompassed by those statutory elements. Each is discussed, in turn, below.

### 1. Determining Which Elements to Compare: the Modified Approach

When the Supreme Court adopted the categorical approach in *Taylor*, it recognized that courts may occasionally struggle to ascertain which elements within a statute should be compared to the generic definition of the offense. *See Taylor*, 495 U.S. at 602. This occurs when a defendant's prior conviction is based on a statute that "sets out one or more elements of the offense in the alternative," *Descamps*, 570 U.S. at 257, "thereby defin[ing] multiple crimes," *Mathis*, 136 S. Ct. at 2249.

These statutes, which have since been dubbed "divisible statutes," make it difficult for reviewing courts to identify which set of statutory elements the defendant violated. Mindful of such situations, the *Taylor* court suggested that courts may need to "go beyond the mere fact of conviction" and look to the facts underlying a conviction in order to determine which element or set of elements was the basis of the defendant's conviction. *See Taylor*, 495 U.S. at 602.

So, when courts attempt to apply the categorical approach but are stymied by a divisible statute, they are permitted "to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 257. In this way, courts are able to identify which elements in a divisible statute should be compared to the generic definition of the offense.

Because this process entails a slight modification to the normal application of the categorical approach, it is sometimes referred to as the "modified" version of the categorical approach.  When we speak of the "modified approach," we simply refer to this additional analytical step in cases involving divisible statutes.  After utilizing this additional step to determine which elements in the statute formed the basis of the defendant's prior conviction, courts resume their application of the categorical approach as they would in any other case.  "[T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute.  The modified approach thus acts not as an exception, but instead as a tool.  It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.* at 263.

Therefore, the first step in applying the categorical approach is to determine whether the statute of conviction "has a single, indivisible set of elements." *See id.* at 258.  Here, the Tennessee statute under which Cradler was convicted, Tennessee Code Annotated § 39-904 ("§ 39-904"), reads as follows:

> **39-904.  Burglary in third degree – Safe cracking – Penalty. –** Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony. Every person convicted of this crime shall be imprisoned in the penitentiary for not less than three (3) years nor more than ten (10) years. . . .
>
> Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished by imprisonment for a term of not less than three (3) nor more than twenty-one (21) years.

Tenn. Code Ann. § 39-904 (1973) (amended and renumbered).  The first paragraph of the statute contains a set of elements and a penalty scheme that are distinct from the set of elements and penalty scheme in the second paragraph.  As such, this statute is divisible.

Because this statute is divisible, the modified approach allows us to review the documents associated with Cradler's conviction to determine which set of elements—i.e., which paragraph of the statute—was the basis for Cradler's conviction.  *See Descamps*, 570 U.S. at 257.  The indictment in his Tennessee case charged Cradler with "burglary in the 3rd degree" for

breaking and entering into a junior high school with the intent to steal the school's goods and chattels. The indictment makes no mention of a vault, safe, or other secure place. Therefore, Cradler was clearly convicted based on the set of elements contained in the first paragraph of § 39-904. Accordingly, we must compare that set of elements to the generic definition of burglary.

## 2. Determining the Full Range of Conduct Encompassed by a Statutory Element

The purpose of the categorical approach is to help courts determine whether the statute of conviction criminalizes more conduct than the generic definition of the offense. Therefore, it is critically important for courts to determine the full range of conduct that is encompassed by each statutory element. When, as here, a defendant's prior conviction is based on a violation of state law, courts cannot accomplish this by looking only to the words of the violated state statute. Rather, courts must consult the pronouncements of the state's highest court to determine the full range of conduct that is encompassed by each statutory element. *See Johnson v. United States*, 559 U.S. 133, 138 (2010). Courts are "bound by [the state's highest court's] interpretation of state law, including its determination of the elements of [state statutes]." *Id.* (comparing the Florida Supreme Court's interpretation of its battery statute to the generic definition of battery).

In *United States v. Mitchell*, 743 F.3d 1054 (6th Cir. 2014), this court had occasion to determine whether the Tennessee robbery statute was a violent felony under the ACCA. The *Mitchell* panel held that a prior panel of this court had erred in an unpublished decision when it defined the statutory element of "fear" by using "the colloquial understanding of fear, as opposed to the meaning of fear as interpreted by the Tennessee Supreme Court." *Mitchell*, 743 F.3d at 1059. In other words, the prior panel erred because it "neglected to assign the meaning of each element of robbery as construed by the Tennessee Supreme Court." *Id.* The *Mitchell* panel concluded, "Neither this court 'nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.'" *Id.* at 1060 (quoting *Johnson v. Fankell*, 520 U.S. 911, 916 (1997)).

Here, the Tennessee Supreme Court case that is most helpful in determining the full range of conduct encompassed by § 39-904's first paragraph is *Fox v. State*, 383 S.W.2d 25

(Tenn. 1964).   To understand *Fox*, it is necessary to briefly discuss the earlier Tennessee Supreme Court case on which *Fox*'s holding is based: *Page v. State*, 98 S.W.2d 98 (Tenn. 1936). *See Fox*, 383 S.W.2d at 26-27.

In *Page*, the court ruled that defendants who had lawfully entered a hotel, opened an office door, and stolen money, had violated Tennessee Code Annotated § 10913 ("§ 10913"). *Page*, 98 S.W.2d at 98-99.   This is significant because the full text of § 10913 is materially identical to the first paragraph of § 39-904, the statute at issue in *Fox* and in Cradler's motion. *See id.* at 98; Tenn. Code Ann. § 10913 (1871) (amended and renumbered).   The two paragraphs are materially identical because § 10913 is the predecessor statute to § 39-904.   *See Fox*, 383 S.W.2d at 27 (noting that "section 10913 . . . [is] now 39-904").   In the intervening period between the *Page* decision and the *Fox* decision, the Tennessee Code was amended and renumbered, and § 39-904 was created by adding a second paragraph (i.e., the safecracking provision) to the end of § 10913.   In other words, the holding in *Page* is an interpretation of what became the first paragraph of § 39-904—the basis of Cradler's prior conviction and the subject of his § 2255 motion.

After quoting § 10913, the *Page* court held, "[O]ne, *although lawfully in a business house*, commits the offense described in § 10913 when he breaks and enters into a room of that business house, which he has no right to enter, for the purpose of committing a felony." *Page*, 98 S.W.2d at 98-99 (emphasis added).   Here we see that, although the text of § 10913 and § 39-904's first paragraph criminalize "the breaking and entering *into* a business house," the Tennessee Supreme Court has held that the first paragraph should be interpreted to also encompass conduct committed by someone already lawfully inside the business house.

In *Fox*, two men were charged with violating § 39-904 after they entered a telephone booth, picked the locks on the payphones, and stole coins from the money receptacles.   *Fox*, 383 S.W.2d at 25.   The defendants argued that they could not have violated § 39-904 because they had entered the telephone booth lawfully, meaning that there was no "breaking." *Id.* at 26. The Tennessee Supreme Court rejected their argument, saying, "[The defendants'] specific point is that the breaking [referred to in the statute] is determined from how they accomplished the

entrance into the booth proper, and not by the subsequent opening of the coin receptacle. *This is not the law in this State*." *Id*. (emphasis added).

The *Fox* court then explained the correct interpretation of Tennessee law: "The holding in the Page case applies to the facts in this case. Defendants could *lawfully enter the telephone booth*, which is a business house within the meaning of § 39-904, but by breaking into the money receptacle after *lawful entry* they would be guilty of burglary in the third degree." *Id*. at 27 (emphasis added). Therefore, *Fox*'s holding, like *Page*'s before it, stands for the proposition that, although the first paragraph of § 39-904 criminalizes "the breaking and entering *into* a business house," this paragraph should be interpreted to also encompass conduct committed by someone already lawfully inside the business house.

### 3. Comparing the Statute to the Generic Offense

After using the modified approach to determine which set of elements is at issue in the case, and after determining how much conduct is encompassed by those elements, courts should "do what the categorical approach demands: compare the elements of the crime of conviction . . . with the elements of the generic crime." *Descamps*, 570 U.S. at 257. If the statutory elements criminalize more conduct than the generic definition of the offense, then the statute does not qualify as a violent felony for ACCA purposes.

Here, we must compare the elements of § 39-904's first paragraph, including the full range of conduct encompassed by those elements, with the elements of the generic definition of burglary. A crime fits within the generic definition of burglary if it "ha[s] the basic elements of [(1)] unlawful or unprivileged entry into, or remaining in, [(2)] a building or structure, [(3)] with intent to commit a crime." *Taylor*, 495 U.S. at 599. The first paragraph of § 39-904 criminalizes "[(1)] the breaking and entering [(2)] into a business house, outhouse, or any other house of another, other than a dwelling house, [(3)] with the intent to commit a felony." Tenn. Code Ann. § 39-904 (1973) (amended and renumbered).

While the first element of the generic definition only encompasses the unlawful entry into or remaining in a building, *Page* and *Fox* tell us that the first element of § 39-904's first paragraph also encompasses conduct undertaken when someone is lawfully inside a building.

*See Fox*, 383 S.W.2d at 26-27; *see also Page*, 98 S.W.2d at 99.  Therefore, § 39-904's first paragraph criminalizes more conduct than generic burglary and, consequently, does not qualify as the enumerated offense of "burglary."  Accordingly, it is not a violent felony for ACCA purposes.

**B.  *United States v. Caruthers***

In *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006), a panel of this court held that § 39-904's first paragraph qualified as the enumerated offense of "burglary" and, therefore, was a violent felony for ACCA purposes.  *Caruthers*, 458 F.3d at 475-76.  Notwithstanding the analysis undertaken above, the *Caruthers* decision would ordinarily be binding on this panel's consideration of Cradler's claim.  However, a court's prior decision ceases to be controlling authority when "an inconsistent decision of the United States Supreme Court requires modification of the decision." *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

After the Supreme Court's decision in *Mathis*, it is clear that the *Caruthers* opinion misapplied the modified approach—it looked to the facts in Caruthers' indictment and then compared those facts to the elements of generic burglary, rather than only using the facts to ascertain which paragraph of § 39-904 was at issue in the case. *See Caruthers*, 458 F.3d at 476.  As *Mathis* explains, this is precisely what the categorical approach prohibits, even when the modified approach's additional step is employed:

> [T]he modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque.  It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts . . . that also could have satisfied the elements of a generic offense.

*Mathis*, 136 S. Ct. at 2253-54 (internal citation omitted).

In light of *Mathis*, we acknowledge that the procedure *Caruthers* prescribes for applying the modified approach is incorrect. *Accord United States v. Johnson*, No. 17-6040, 2018 WL 1569226, at *3 (4th Cir. Mar. 30, 2018); *Mitchell v. United States*, 257 F. Supp. 3d 996, 1014

(W.D. Tenn. 2017). Consequently, we now hold that the conclusion reached as a result of that incorrect procedure—that Tennessee third-degree burglary is a violent felony under the ACCA—is no longer controlling authority in this circuit. Because the Tennessee Supreme Court has included offense conduct in its definition of third-degree burglary that lies outside the narrower definition of generic burglary, Cradler's third-degree burglary conviction does not qualify as a violent felony under the ACCA.

## V.    CONCLUSION

For the abovementioned reasons, we **REVERSE** the decision of the district court and **REMAND** the case for further proceedings consistent with this opinion.

———————————

## CONCURRENCE

———————————

KETHLEDGE, Circuit Judge, concurring. I fully join Judge Keith's thoughtful opinion, which faithfully applies the so-called categorical approach to determining whether the Tennessee crime for which Cradler was convicted in 1978 was a violent felony for purposes of the Armed Career Criminal Act. Respectfully, though, that approach only gets in the way of applying the Act here. Nobody disputes that the indictment for Cradler's offense charged him only with conduct amounting to generic burglary (a violent felony for purposes of the Act). *See Taylor v. United States*, 495 U.S. 575, 598 (1990). Thus, we can readily tell that Cradler was in fact convicted of a violent felony. Yet under the categorical approach we cannot consider that reality. *See Descamps v. United States*, 570 U.S. 254, 257 (2013). Instead we must look to the elements of the relevant Tennessee offense, which by their terms likewise seem to describe only generic burglary. But we are also bound by the Tennessee caselaw for the offense, which includes one case—from over fifty years ago and rarely cited since—where the Tennessee Supreme Court seems to have read the relevant statutory provision (notwithstanding its plain terms) to cover certain acts that are not generic burglary. So construed, the Tennessee offense encompasses more than generic burglary, and thus we are bound to hold that Cradler's generic burglary was not generic burglary for purposes of the Act. Whatever the merits of this approach, accuracy and judicial efficiency are not among them, at least not here. *See id*. at 284-94 (Alito, J., dissenting). Meanwhile, Cradler will not serve the sentence mandated by Congress (and served by many similarly situated defendants) for carrying a gun after being convicted of three violent felonies, including one "that . . . is burglary[.]" 18 U.S.C. § 924(e)(2)(B)(ii). Admittedly, the federal courts and the Supreme Court in particular have had a tough hand in trying to make sense of the Act's violent-felony provisions. But cases like this one make one wonder about the categorical approach's fairness too.