RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0203p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

RAYMOND CARTWRIGHT JR.,

> *Petitioner-Appellant,*

> Nos. 19-5852

*v.*

UNITED STATES OF AMERICA,

> *Respondent-Appellee.*

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
Nos. 1:04-cr-00033-1; 1:16-cv-00517—Curtis L. Collier, District Judge.

Argued:  April 20, 2021

Decided and Filed:  August 31, 2021

Before:  KETHLEDGE, STRANCH, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  **ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge.  Raymond Cartwright Jr. is serving a twenty-four-year sentence under the Armed Career Criminal Act (ACCA).  When Cartwright was last convicted

and sentenced in 2005, seven of his past convictions qualified as violent felonies.  But in 2015, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591, 602 (2015), invalidating ACCA's residual clause.  *Johnson* removed at least four of Cartwright's offenses from the category of violent felonies.  Cartwright brought a habeas petition challenging his ACCA status by arguing that his remaining convictions for burglary and aggravated assault do not support his ACCA sentence.  The district court held that, even after *Johnson*, Cartwright still had at least three ACCA predicates because his Tennessee first- and second-degree burglaries qualified as violent felonies.  We hold that these crimes are not "generic" burglaries and therefore **REVERSE** the district court and **REMAND** for further proceedings.[1]

## Background

### I.

ACCA provides a mandatory minimum sentence for those convicted of possessing a firearm as a felon who have at least three prior convictions for violent felonies and serious drug offenses:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).  ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

- "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); or

- "(ii) is burglary, arson, or extortion, involves use of explosives" (the "enumerated-crimes clause"); or

- "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause").

---

[1]Both Cartwright and the government filed motions for judicial notice, which we held in abeyance pending our decision on the merits.  For the reasons discussed below, both motions are moot.

*Id.* at § 924(e)(2)(B).   Any conviction that falls within this ACCA section can serve as a "predicate" offense that counts toward the required three prior felonies.

The Supreme Court held that the last of these three clauses—the residual clause—is so vague that to apply it violates due process.  *Johnson*, 576 U.S. at 602.  The Court also held that *Johnson*'s holding is retroactive to criminal cases on collateral review.  *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).  This means that a prisoner serving a sentence under ACCA whose career criminal status rested on the residual clause may raise a *Johnson* claim in a habeas petition.  *See* 28 U.S.C. § 2255(h)(2).

Although the enumerated-crimes clause includes the word "burglary," not every burglary falls inside the enumerated-crimes clause.  18 U.S.C. § 926(e)(2)(B)(ii).  ACCA fails to define what counts as a burglary, and state definitions can vary widely.  To cabin the reach of the enumerated-crimes clause, the Supreme Court held that only "generic" burglary counts as a predicate under the enumerated-crimes clause.  *Taylor v. United States*, 495 U.S. 575, 599 (1990).  Generic burglary has the basic elements of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  *Id.*

In determining whether a burglary is generic, courts look only at the elements of the offense.  This categorical approach focuses "solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case."  *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *Taylor*, 495 U.S. at 601–02.  Any burglary offense with elements that match or are narrower than the elements of generic burglary can be a predicate under the enumerated-crimes clause.  *Id*. at 599.  But if the burglary offense can include conduct that is not generic burglary, convictions under that statute cannot be ACCA predicates.  In determining the elements of a state-law crime, we defer to the state supreme court's determination of the state's law.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010).

## II.

A jury convicted Cartwright of being a felon in possession of a firearm in 2005, a violation of 18 U.S.C. § 922(g).  And his Presentence Report (PSR) concluded that Cartwright

qualified as a career criminal under United States Sentencing Guideline § 4B1.4(b)(3)(B) and the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).

The PSR characterized seven of Cartwright's past convictions as "crimes of violence": "Third Degree Burglary (1980), Aggravated Assault (1980), First Degree Burglary (1980), Second Degree Burglary (1981), two Felonious Escapes (1982), and Incest (1991)." (PSR at 7, ¶ 33.) Elsewhere in the PSR, a bold indicator followed six of these seven entries, labeling them as predicate offenses with a statement like, "*This is a predicate conviction for Armed Career Criminal purposes.*" (*Id.* at 7–13, ¶¶ 38, 40, 42–45, 53.) Only Cartwright's aggravated assault conviction did not have a similar indicator. The district court determined that Cartwright's guideline range was 235 to 293 months, and it sentenced him to 288 months. On direct appeal, Cartwright challenged only the sufficiency of the evidence, and we affirmed. *United States v. Cartwright*, 221 F. App'x 438, 439 (6th Cir. 2007) (per curiam). Cartwright then filed a § 2255 petition in 2008 that the district court denied. *Cartwright v. United States*, No. 1:04-CR-33, 2011 WL 6003659 (E.D. Tenn. Dec. 1, 2011).

In May 2016, after the Supreme Court decided *Johnson*, Cartwright moved for an order authorizing the district court to consider his second or successive habeas petition. The government responded that Cartwright met the § 2255(h)(2) gatekeeping requirements because he relied on *Johnson*. But it also argued that the court should deny the petition as meritless because his three prior burglaries qualified as predicates under ACCA's enumerated-offense clause, which meant *Johnson* did not affect Cartwright's sentence. Cartwright, proceeding pro se, later moved to amend his petition to request that the court apply the *Mathis* categorical approach to his burglary offenses. *See Mathis*, 136 S. Ct. at 2248. And he argued in his reply to the government's response that all three of his burglary convictions were under statutes broader than generic burglary. A panel granted the petition and authorized the second or successive motion on the *Johnson* question.

In the district court, Cartwright's habeas petition argued that *Johnson* invalidated his ACCA sentence because he had fewer than three—and perhaps zero—remaining convictions that qualified as violent-felony ACCA predicates. Cartwright also requested counsel. The government again responded that *Johnson* did not affect Cartwright's sentence because his "three

prior Tennessee burglary convictions categorically qualify as violent felonies under the ACCA's enumerated-offense clause and are thus unaffected by *Johnson*."

Through counsel, Cartwright then submitted a supplemental habeas petition, arguing that Cartwright's third-degree burglary, aggravated assault, felonious escape, and incest convictions no longer qualified as ACCA predicates under *Johnson*. The government responded to this as well, conceding that our decision in *Cradler* affected Cartwright's third-degree burglary conviction but not his first-degree burglary, second-degree burglary, and aggravated assault convictions. *See Cradler v. United States*, 891 F.3d 659, 671 (6th Cir. 2018). The government asserted that "Tennessee's definitions of first-degree burglary and second-degree burglary precisely track the generic definition of burglary." Cartwright replied, arguing that his aggravated assault conviction was based on the now-invalid residual clause and that his first-degree burglary and aggravated assault offenses did not occur on different occasions, meaning that they cannot count as two separate predicates under 18 U.S.C. § 924.

The district court rejected Cartwright's claims. *Cartwright v. United States*, No. 1:16-CV-517-CLC, 2019 WL 2453660 (E.D. Tenn. June 12, 2019). It held that the Tennessee first- and second-degree burglary statutes were generic, making Cartwright's convictions ACCA predicates. *Id.* at *3. His third-degree burglary conviction, however, was not an ACCA predicate under *Cradler*. It also held that Cartwright's felonious escape and incest convictions were not ACCA predicates. *Id.* at *3–4. On the aggravated assault conviction, the court found that Cartwright was convicted under the part of Tennessee's statute that qualified as an ACCA predicate. *Id.* at *4–5. It also addressed his argument that he did not commit the aggravated assault and first-degree burglary on different occasions, noting that they involved different co-defendants and victims and were thus likely done on separate occasions. *Id.* at *5. The district court granted a COA on only whether the aggravated assault and first-degree burglaries occurred on different occasions. *Id.* at *6.

Cartwright moved to expand the COA, and we granted that request. *Cartwright v. United States*, No. 19-5852, 2020 U.S. App. LEXIS 31878 (6th Cir. Oct. 7, 2020) (order). Cartwright now makes three arguments: (1) The government cannot rely on his aggravated assault predicate because it did not properly specify it as a predicate in the PSR, (2) Cartwright's burglary

convictions cannot be ACCA predicates, and (3) Cartwright's aggravated assault and first-degree burglary offenses cannot count as two predicates because they did not occur on separate occasions. We hold that Cartwright's Tennessee burglary convictions cannot be ACCA predicates.[2] Because that decision resolves the case, we do not reach the first or third issues.

## Discussion

Cartwright argues that Tennessee first- and second-degree burglary do not count as generic burglary and thus do not count as ACCA predicates.[3] We first deal with procedural barriers the government raises. We then address the merits of Cartwright's claim. Finally, we analyze our circuit's precedent on this question.

## I.

The government raises several procedural hurdles that it says block review of Cartwright's claims: the gatekeeping requirements of the Antiterrorism and Effective Death Penalty Act (AEDPA), untimeliness, and procedural default. We find that Cartwright's claims are not barred.

## A.

The government first raises the AEDPA gatekeeping requirements, noting that Cartwright's second or successive motion must point to a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); (Appellee's Br. at 14–18.) Because Cartwright's claims lean on *Taylor*'s holding about generic burglary, the government argues that his case is based not on *Johnson*'s new constitutional rule, but on *Taylor*'s 30-year-old statutory-interpretation rule. (Appellee's Br. at 15–16.)

---

[2]Whether a conviction counts as an ACCA predicate is a question of law we review de novo. *See Raines v. United States*, 898 F.3d 680, 686 (6th Cir. 2018).

[3]The government argues that Cartwright's third-degree burglary is actually a first-degree burglary, and that Cartwright knew that. (Appellee's Br. at 3 n.1.) But the government itself filed a motion for judicial notice on this issue only recently noting that it discovered this discrepancy while preparing for this appeal. In any event, because we hold that first-degree burglary is also too broad to be generic burglary, *see infra* Section II.B, this discrepancy won't matter.

This argument fails because it does not account for the structure of a *Johnson* claim in the habeas context. Bringing a *Johnson* claim is a two-step process: first, the court decides whether the petitioner was sentenced under the residual clause; second, the court decides whether the predicates that rested on the residual clause can still count as predicates under another clause. *Williams v. United States*, 927 F.3d 427, 445 (6th Cir. 2019). At the first step in a second or successive petition, the petitioner "must show that it is more likely than not that the district court relied only on the residual clause in sentencing him." *Id.* at 439[4] (quoting *Potter v. United States*, 887 F.3d 785, 787 (6th Cir. 2018)). That inquiry is backward-looking; it looks at what the sentencing court did. And *Williams* articulated five sources of helpful information for determining whether the original court used the residual clause in finding that the petitioner had at least three predicate convictions: "(1) The sentencing record," "(2) The legal background," "(3) Informed decisionmakers," "(4) Nature of the predicate offense," and "(5) Later legal developments (at least if highly predictable)." *Id.* at 441.

Second, even if the petitioner shows that the original sentencing court more likely than not used the residual clause, the petitioner still does not prevail unless he shows prejudice: that the crime cannot qualify as a predicate under the elements or enumerated-crimes clauses. *Id.* at 445. This inquiry is present-day; it looks at the predicate convictions in light of current law.[5]

Throughout the district court proceedings, both parties seemed to skip the threshold *Johnson* question and go straight to the prejudice question. They may have done so because the government had already admitted that Cartwright's claim was based on *Johnson* or because the cases that clarified the two-step process did not issue until after this case was underway. So in effect, the parties only looked at the prejudice inquiry. The district court also went straight to whether the convictions qualified under the enumerated-crimes clause.

---

[4]The standard is different for initial habeas claims, but that does not impact this case. *See Chaney v. United States*, 917 F.3d 895, 899 (6th Cir. 2019).

[5]For example, the court in *Williams* first found that the petitioner had shown that the sentencing judge more likely than not relied on the residual clause in sentencing him in 2006, and then it applied *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019), to determine whether the predicate offenses could qualify under either remaining clause. 927 F.3d at 445. "Because neither the residual clause nor the elements clause can *now* justify deeming that conviction an ACCA predicate, Williams's federal prison sentence as an armed career criminal is no longer justified under federal law." *Id.* at 445–46 (emphasis added).

Looking at Cartwright's claim as a two-step analysis shows that his claim is based on *Johnson* and that his *Taylor* arguments go to the prejudice prong. He cited *Johnson* as the reason for his habeas petition in his first pro se filing. So too did the supplemental motion submitted by his counsel. Had the government pressed the first step in the analysis, or had the parties had the benefit of *Potter* and *Williams*, Cartwright could have framed his argument as first addressing the *Johnson* violation and then addressing prejudice. But the mere fact that the parties focused on prejudice—which involved the *Taylor* analysis—in the district court does not mean that Cartwright's claim is not based on *Johnson*.

Cartwright's claim is not like those that have tried to shoehorn claims into *Johnson*. In *Massey v. United States*, for instance, the sentencing court had explicitly based petitioner's ACCA sentence on the force clause. 895 F.3d 248, 252 (2d Cir. 2018). So the residual clause had nothing to do with the petitioner's ACCA status, and *Johnson* had nothing to do with his claim. Similarly, in *Dimott v. United States*, two of the defendant's ACCA predicates rested on the enumerated-crimes clause, making *Johnson* inapplicable, and the other did not meet the circuit's standard for showing that he was sentenced under the residual clause. 881 F.3d 232, 236–37, 240 (1st Cir. 2018).

In sum, as the government already admitted, Cartwright's claim is based on *Johnson*, a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). The AEDPA gatekeeping requirements do not bar his claim.

**B.**

The government next argues that Cartwright's claim is untimely under the applicable statute of limitations, which requires that a habeas petition based on a "newly recognized" right be filed within one year of when the right was "initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). The government's first timeliness argument is that Cartwright did not bring his claim within a year of *Taylor*, on which the government says Cartwright bases his claim. As noted, Cartwright's claim is based on *Johnson*, so this argument fails.

Alternatively, the government argues that Cartwright's claim is untimely because he did not challenge his first- and second-degree burglary convictions until January 2020—when he requested a certificate of appealability on those claims—which would mean he raised the claims over one year after *Johnson*. Cartwright timely raised the burglary claims in his pro se petition, which he filed in May 2016—a month before the deadline for *Johnson*-based claims. Then he explicitly requested to amend his claim to include a *Mathis* analysis on his burglary claims, and this court granted the motion. *Cartwright*, 2016 U.S. App. LEXIS 24561. A *Mathis* analysis determines whether a crime is generic. *Mathis*, 136 S. Ct. at 2248. So his amendment reinforced his claim that his burglaries fell under a non-generic statute. *See Raines*, 898 F.3d at 687 (holding that a petitioner citing *Johnson* and noting its holding was enough to avoid a forfeiture "[i]n light of [the petitioner's] pro se status").[6]

## C.

Finally, the government argues that Cartwright procedurally defaulted his argument that his first- and second-degree burglary convictions are not generic by failing to raise them on direct appeal. But this argument fails, ironically, because the government did not raise it below. "Because procedural default is an affirmative defense, rather than a jurisdictional argument, we are not required to consider it once it has been forfeited." *Cradler*, 891 F.3d at 666.

The government interpreted Cartwright's district-court claims as including all three degrees of burglary and responded to that argument multiple times without raising the procedural default defense. It argued at the petition-authorization stage that all three degrees of Tennessee burglary were generic. And the government responded to Cartwright's first pro se brief by arguing that Tennessee first-, second-, and third-degree burglary are all generic burglary.

---

[6]Although Cartwright's appointed counsel did not press the first- or second-degree burglary claims in her supplemental motion to vacate, Cartwright did not forfeit them for two reasons. First, "there can be no forfeiture where the district court nevertheless addressed the merits of the issue." *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (quoting *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009)). And the district court held that the first- and second-degree burglaries qualified as predicates. *Cartwright*, 2019 WL 2453660, at *3. Second, the government didn't raise a waiver or forfeiture argument. "[A]s with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion." *United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009) (quoting *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998)).

Although it interpreted Cartwright's claims to apply to all three degrees of burglary, it never argued that Cartwright had procedurally defaulted any of his claims.**[7]**

Although we have the authority to overlook the government's default, we decline to do so for two reasons. First, any argument for overlooking the government's forfeiture is "undercut" by the "potent bit of irony" that to grant its request would be to excuse the government but not the petitioner for the same type of error. *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019). Second, the government has not provided a reason to overlook the forfeiture. *See Cradler*, 891 F.3d at 666. We overlook forfeiture in only "exceptional cases," and the government gives no reason why this is such a case; it does not acknowledge its forfeiture at all. *Greer*, 938 F.3d at 770.

## II.

Now we turn to the merits: whether Tennessee burglary fits within generic burglary, the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. We consider three separate issues: (1) The structure of the Tennessee burglary statutes, (2) The breadth of Tennessee burglary and generic burglary, and (3) The influence of the conflicting precedents. Because we are using the categorical approach, the details of Cartwright's burglaries are not important for these questions.**[8]**

---

**[7]**The government wrote in its supplemental response that the supplemental petition had not argued about first- and second-degree burglary. But this cannot save its procedural default claim for two reasons. First, its argument in the supplemental petition is at best a waiver argument, not a procedural default argument. So it does not preserve the procedural default argument for appeal. Second, the fact that counsel did not press those arguments in the supplemental brief does not erase the fact that Cartwright had raised the claims before and given the government an opportunity to respond.

**[8]**All references to Tennessee burglary will refer to the law when Cartwright offended. The version of the law in effect at that time was the pre-1982 law, but the law pre-1989 did not change in substance.

**A.**

There were four relevant Tennessee provisions when Cartwright was convicted:

**39-901. Burglary — Penalty. —** Burglary is the breaking and entering into a dwelling house . . . by night, with intent to commit a felony . . . .

**39-902. Breaking after entry. —** Any person who, after having entered upon the premises mentioned in § 39-901, with intent to commit a felony, shall break any such premises, or any safe or receptacle therein, shall receive the same punishment as if he had broken into the premises in the first instance . . . .

**39-903. Burglary in the second degree — Penalty. —** Burglary in the second degree is the breaking and entering into a dwelling house . . . by day, with the intent to commit a felony . . . .

**39-904. Burglary in the third degree — Safe cracking — Penalty. —** Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony . . . .

[Safe cracking] Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished . . . .

Tenn. Ann. Code §§ 39-901 to 904 (1975).  The text of the first-, second-, and third-degree statutes includes only generic burglary.  Anything that could fall inside those statutes would also be "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  *Taylor*, 495 U.S. at 599.  But the intervening section on "Breaking after entry" involves more than generic burglary because it includes *lawfully* entering a house and then opening a "safe or receptacle" inside.  That cannot fit inside generic burglary because it does not include "unlawful or unprivileged entry into, or remaining in" the building or structure.  *Id.*

The government says that's no problem for this case because the breaking-after-entry section is a different offense than the burglaries that Cartwright committed.  Under that view, only offenses under the breaking-after-entry provision fail the generic burglary test.  If that were true, the government would prevail.

But the Tennessee courts did not treat breaking after entry that way.  Instead, breaking after entry was a way to commit the other burglaries in the statute.  *Id.*  For example, in *State v.*

*Bush*, 942 S.W.2d 489, 519 (Tenn. 1997), a defendant was convicted of first-degree burglary. Although the defendant was charged under the first-degree burglary statute, the court instructed the jury under *both* the first-degree burglary statute and the breaking-after-entry statute. *Id.* When the defendant argued on appeal that he had not broken into the home and could not be guilty of first-degree burglary, the Tennessee Court of Criminal Appeals pointed to evidence that the burglar had opened a drawer once inside—a breaking after entry that permitted his conviction for first-degree burglary.**9** *Id.*

The statutory language supports the view that breaking after entry is not a separate offense. Unlike the other sections—which all specify punishments for the different degrees of burglary—the breaking-after-entry section makes the burglar subject to "the same punishment as if he had broken into the premises in the first instance." § 39-902. That the statute relies so heavily on the other burglary sections implies that the § 39-902 offense cannot stand alone. And a note on the breaking-after-entry section in the annotated code says, "While the specific language of this section only applies to § 39-301, the principle enunciated herein applies to § 39-904." 7 TENNESSEE CODE ANNOTATED 129 (1975). If the language of the section "applies" to other sections, then it changes the way those sections work rather than setting up a separate offense.

The pattern jury instructions also support this view. They included breaking after entry as an optional instruction to include in the instructions for each of the three degrees of burglary. 7 COMMITTEE ON PATTERN JURY INSTRUCTIONS (CRIMINAL) OF THE TENNESSEE JUDICIAL CONFERENCE, TENNESSEE PATTERN JURY INSTRUCTIONS 90, 93–94, 96–97 (2d ed. 1988). Breaking after entry does not have its own separate instruction.

Tennessee case law also makes clear that we should treat all three degrees of burglary as including breaking-after-entry. The Tennessee Supreme Court upheld a third-degree burglary conviction based on the "same principle" as the breaking-after-entry section that applied to the

---

**9**The intermediate court of appeals had also noted that "in consideration of [the breaking-after-entry section]," the fact that the defendant had opened "the top right-hand dresser drawer" and "the kitchen drawer" supported the conviction for first-degree burglary. *State v. Bush*, No. 03C01-9403-CR-00094, 1996 WL 55627, at *29 (Tenn. Crim. App. Feb. 12, 1996), *aff'd,* 942 S.W.2d 489 (Tenn. 1997).

first- and second-degree burglary sections. *Fox v. State*, 383 S.W.2d 25, 26–27 (Tenn. 1964). And other cases have clarified that first-, second-, and third-degree burglary are all different levels of the same basic offense. *See State v. Teasley*, 719 S.W.2d 148, 148 (Tenn. 1986) (third-degree burglary is a lesser included offense of second-degree burglary); *Ledger v. State*, 285 S.W.2d 130, 132 (Tenn. 1955) (second-degree burglary involves the same conduct as first-degree burglary except for proof of the nighttime element).

All three degrees of Tennessee burglary include entering lawfully and then opening a "receptacle" inside—no unlawful entry or remaining required. Our holding that this extends the offense beyond generic burglary tracks *Cradler*, which held that the third-degree burglary was not generic because the Tennessee Supreme Court applied the breaking-after-entry section to third-degree burglary. 891 F.3d at 671.

**B.**

But the government argues that the common law shows our conclusion to be wrong. First, it argues that breaking-after-entry burglary is part of generic burglary because it has always been a part of the common law. Second, it argues that breaking after entry is another form of remaining-in burglary. Neither of these arguments is persuasive.

**1.**

The government argues that the contours of the common law apply because the Supreme Court said that generic burglary includes "at least the 'classic' common-law definition" of burglary, which is the "core, or common denominator, of the contemporary usage of the term." *Taylor*, 495 U.S. at 593. The government cites Blackstone, Coke, and Hale to show that breaking into another part of the house after entering falls inside the common-law definition of burglary. Examples include a person entering a house and then breaking into another room or cabinet attached to the house, a domestic servant entering the master's chambers to commit a felony, and an inn patron going into another guest's room.

But the *Taylor* Court did not include the minutiae of the common law in "generic" burglary. When it said that the "'classic' common-law definition" was the "core" burglary, it

defined what it meant. The narrow common-law crime of "breaking and entering of a dwelling at night, with intent to commit a felony" fell inside "generic" burglary because it was more narrow than generic burglary. *Id.* at 592–93. That does not mean that all the common-law burglary guidance—such as deciding whether a chimney-descending thief is a burglar based on whether he dislodges bricks—is equally part of the "core."[10] While the discussion of what the common law considered "burglary" may be interesting, it pulls attention away from the Supreme Court's definition of generic burglary: "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. Since Tennessee law would allow a conviction for burglary without unlawful or unprivileged entry, it is broader than generic burglary.

Still, the government would lose in a head-on common-law debate. It points out examples from the common law in which someone who lawfully enters a house but then unlawfully opens another part of the house becomes a burglar. True enough. But this ignores the common law's distinction between parts of the house and unattached containers. Because burglary required "breaking" some part of the house, opening an unattached container that was "not a part of the structure" did not satisfy the breaking element. Wayne R. LaFave, 3 *Substantive Criminal Law* § 21.1(a) (3d ed. 2020, Oct. 2020 update). Hale notes the difference:

> If *A.* enter into the house of *B.* in the night, by the doors open, and breaks open a chest, and takes away goods without breaking open of an inner door, this is no burglary, because the chest is no part of the house . . . But if he break open a study or counting-house, or shop within the house, this is burglary . . . and the same law seems to be, if he break open a cupboard or counter fixed to the house . . . .

Hale, *supra*, at 554–55 (cleaned up). Other sources that the government cites likewise note this difference, including the LaFave chapter from which the government quotes one sentence ("A breaking occurs if a part of the house was opened even though the original entry into the structure was gained without a breaking.") but not the next sentence ("The opening of an article which was not a part of the structure would not suffice as a breaking."). LaFave, *supra*,

---

[10]1 Matthew Hale, Historia Placitorum Coronae: The History of the Pleas of the Crown 552 (1736).

§ 21.1(a).[11] In short, since a "receptacle" in the Tennessee burglary statute need not be attached to the house, the statute is broader than generic burglary.

**2.**

The government also argues that "remaining-in" burglary statutes show that Tennessee burglary falls inside generic burglary. It says that unlawfully accessing a restricted part of a structure transforms one's lawful presence to unlawful remaining. The government faults *Cradler* for assuming that generic burglary could never include conduct after initially entering lawfully, an assumption that the government says does not bind this court.

It is true that unlawfully entering a restricted part of a house constitutes "unlawful entry or remaining in," but standing lawfully in a room and unlawfully opening a container does not convert one's presence from lawful to unlawful. Remaining unlawfully means that the culprit entered legally and then overstayed his authorization to be inside, such as "a bank customer who hides in the bank until it closes and then takes the bank's money." LaFave § 21.1(b). It does not refer to someone who enters legally and then enters a restricted part of the building. That is simply unlawful entry. And *Cradler* did not assume that generic burglary excluded any conduct following lawful entry. It said that, while generic burglary requires unlawful entry into or remaining in, Tennessee third-degree burglary included conduct done while someone was lawfully present. *See Cradler*, 891 F.3d at 670–71.

**3.**

The last question, then, is how to parse our existing circuit precedent. Two Sixth Circuit cases bear directly on whether Tennessee burglary is an ACCA predicate. The first is *United States v. Jones*, which held that a Tennessee conviction for *second*-degree burglary qualified as an ACCA predicate under the enumerated-crimes clause because it was generic burglary. 673 F.3d 497, 505 (6th Cir. 2012). The court analyzed whether the statutory text included

---

[11]*See also* 3 Charles E. Torcia, *Wharton's Criminal Law* § 318 (15th ed. 1993, Aug. 2020 update) (footnotes omitted) ("There is a break if he opens the door of a wall cupboard, but there is no break if he opens a trunk or a safe. The result turns on whether the container is built into the wall as a part of the house itself or whether it is simply a chattel or a separate piece of furniture.").

non-building places, such as cars or boats. *Id.* Finding that it did not, it held that second-degree burglary counted as a "violent felony." *Id.*

Later, this court held that Tennessee *third*-degree burglary does *not* qualify as an ACCA predicate because it is broader than generic burglary.**[12]** *Cradler*, 891 F.3d at 671. To compare the elements of that crime with generic burglary, the court looked not only to the words of the statute but also to the Tennessee Supreme Court's rulings. *Id.* at 669. In *Fox*, the Tennessee Supreme Court held that lawfully entering a phone booth and breaking into the money receptacle fell under the third-degree burglary statute. *Id.* at 670 (citing *Fox*, 383 S.W.2d at 25–27). The *Cradler* court then compared the state court's interpretation of Tennessee third-degree burglary with generic burglary and found mismatch. Because Tennessee interpreted its third-degree burglary to include entering lawfully and then breaking into a receptacle, the statute swept more broadly than generic burglary and could not be an ACCA predicate. *Id.* at 671.

The results in *Jones* and *Cradler* fit awkwardly together. The three degrees of Tennessee burglary all had the same breaking-after-entry element—either by statute or under Tennessee precedent—but the cases came to opposite conclusions under the categorical approach. To follow both precedents would lead to "nonsensical results." *Kitts v. United States*, 812 F. App'x 336, 340 (6th Cir. 2020).

But we ultimately decline to follow *Jones* for two reasons. First, *Jones* settled only one argument: whether Tennessee burglary included "entry into cars and boats," which would make it broader than the generic crime of breaking into a "building or structure." *Jones*, 673 F.3d at 505. We held that it did not. But *Jones* "*assumed* that Tennessee defined its first element, breaking and entering, in conformance with generic burglary." *Kitts*, 812 F. App'x at 340. "At no point did the . . . panel consider and consciously decide" whether the breaking-and-entering prong fit inside generic burglary. *Wright v. Spaulding*, 939 F.3d 695, 704 (6th Cir. 2019). "There was no 'application of the judicial mind' to that question, so there was no 'decision' about it." *Id.* (quoting *Carroll v. Carroll's Lessee*, 57 U.S. 275, 287 (1853)). While *Jones* appears pertinent to this case because it addresses the same degree of Tennessee burglary, its

---

**[12]**The court applied the modified categorical approach to determine that the indictment charged Cradler with third-degree burglary rather than the safecracking offense in the same statute. *Cradler*, 891 F.3d at 668–69.

assumptions about the breaking-and-entering prong are not part of its holding such that they could bind future courts. Now that the question—whether the breaking-and-entering prong falls inside generic burglary—faces this court directly, we must decide it on the merits.

The second reason we do not follow *Jones* is that it conflicts with Supreme Court precedent directly on point. When a prior circuit decision conflicts with an intervening Supreme Court precedent, the panel must follow Supreme Court guidance. *United States v. Deen*, 706 F.3d 760, 767 (6th Cir. 2013). This is a familiar issue in evolving ACCA jurisprudence.[13] And the Supreme Court held in *Descamps* that a state burglary statute without an unlawful entry element cannot be generic burglary. "Because generic unlawful entry is not an element, or an alternative element, of § 459, a conviction under that statute is never for generic burglary." *Descamps v. United States*, 570 U.S. 254, 277 (2013). The panel must apply this unequivocal Supreme Court precedent rather than the conflicting holding in *Jones*.

## Conclusion

We hold that Cartwright's Tennessee first- and second-degree burglary convictions are non-generic and therefore cannot be ACCA predicates. And the pending motions for judicial notice are moot. We reverse the district court's holding and remand for proceedings consistent with this opinion.

---

[13]The court in *Cradler* noted that *Mathis* made clear that *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006), had misapplied the categorical approach, making its holding on Tennessee third-degree burglary not binding. *Cradler*, 891 F.3d at 671. And in *United States v. Quarles*, the court conducted full de novo review of a question because previous circuit decisions on the question were issued before *Descamps*. 850 F.3d 836, 839 (6th Cir. 2017). *See also United States v. Mitchell*, 743 F.3d 1054, 1059–60 (6th Cir. 2014) (faulting previous unpublished opinions for failing to look to the Tennessee Supreme Court's interpretations of state law).